**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

DYLAN ANTHONY DAVIS,

    Petitioner,

    v.

WARDEN FCI CUMBERLAND,

    Respondent.

Civil Action No.:  ABA-25-1559

**MEMORANDUM OPINION**

In response to this Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, Respondent has filed a Motion to Dismiss or, in the alternative, for Summary Judgment.  ECF No. 7.  Self-represented Petitioner Dylan Anthony Davis opposes the motion.  ECF Nos. 11 and 12. For the reasons that follow, Respondent's motion shall be granted.[1]

I.    **BACKGROUND**

Davis states in his petition that he is serving a 144-month sentence, and he is confined to the Federal Prison Camp ("FPC") in Cumberland, Maryland.  ECF No. 1 at 2.  He states that as of April 15, 2025, he served "approximately 6 years, 10 months, and 20 days of his sentence or 82 months (over 50% of his imposed sentence)."  *Id.*  According to a "Best Case Scenario" report provided to Davis by the Federal Bureau of Prisons ("BOP"), his release date via application of good conduct time (GCT) is October 13, 2028, and his release date with the additional application of FSA credits would be October 14, 2027, which is also his "FSA Conditional Release Date." ECF No. 1-1 at 2.  If he is given 365 days of Second Chance Act ("SCA") placement days, he

---

[1]    The Court will also grant Davis's Motion to Proceed in Forma Pauperis.  ECF No. 5.

would be moved to that placement on October 14, 2026.  *Id.*  There is a caveat provided in BOP's

"Best Case Scenario" document that reads as follows:

> All conditional days and conditional dates below are the individual's best case scenario given the individual's FSA/FTC status and best case Second Chance Act (SCA) days as of 02-26-2025.  These dates can change if there are changes to one or more of the following: the individuals [sic] FSA risk, FSA opt-in/opt-out status, or best case SCA days.
>
> SCA DAYS ARE NOT GUARANTEED AND REQUIRE AN INDIVIDUALIZED ASSESSMENT!    THEREFORE, IF A DEFAULT OF 365 DAYS IS REFLECTED, THIS DATE IS SUBJECT TO CHANGE BASED ON THE REQUIRED FIVE-FACTOR REVIEW UNDER 18 USC SEC. 3621(B).    AN INDIVIDUAL WHO HAS PENDING CHARGES/DETAINERS ARE NOT ELIGIBLE FOR SCA TIME. THE FIVE-FACTOR REVIEW INVOLVES THE FOLLOWING: (1) THE RESOURCES OF THE FACILITY CONTEMPLATED; (2) THE NATURE AND CIRCUMSTANCES OF THE OFFENSE; (3) THE HISTORY AND CHARACTERISTICS OF THE PRISONER; (4) ANY STATEMENT BY THE COURT THAT IMPOSED THE SENTENCE: (a) CONCERNING THE PURPOSES FOR WHICH THE SENTENCE TO IMPRISONMENT WAS DETERMINED TO BE WARRANTED; OR (b) RECOMMENDING A TYPE OF PENAL OR CORRECTIONAL FACILITY AS APPROPRIATE; AND (5) ANY PERTINENT POLICY STATEMENT ISSUED BY THE U.S. SENTENCING COMMISSION.

*Id*. (capitals in original).

Davis explains that on March 25, 2025, his Unit Team conducted an assessment of his pre-

release needs.  ECF No. 1 at 2.  The Unit Team followed the five-factor review outlined above and

recommended for Davis to receive the full 365 days of SCA placement, allowing for his transfer

to community placement on April 29, 2025.  *Id.*; *see also* ECF No. 1-2 at 3.  The recommendation

was approved by the Camp Administrator and the Warden at FCI-Cumberland.  ECF No. 1 at 2.

According to Davis, on March 31, 2025, the BOP Central Office issued a memorandum

implementing a policy that limited SCA placements to a maximum of 60 days, effective April 21,

2025. ECF No. 1 at 2. However, after criticism of the new policy, it was rescinded on April 10, 2025, and the BOP announced it would revert back to providing pre-release placements at the earliest dates possible. *Id*. Respondent denies that a blanket policy limiting SCA placements to 60 days was ever issued by the BOP Central Office. ECF No. 7-1 at 3, ¶ 21 (Decl. of Robert Gray).

Davis claims that despite the brief change in policy he was informed on April 15, 2025, by his Unit Team, that the Regional Reentry Manager ("RRM") in Atlanta had "unilaterally reduced his SCA placement to **82 days**, without providing ANY individualized justification for this decision or addressing the five statutory factors previously considered by the facility staff." ECF No. 1 at 2 (emphasis in original). Davis characterizes this change in his SCA placement as an arbitrary decision with a direct impact on his reentry planning, unnecessarily extending his imprisonment. *Id*. He argues that the change is arbitrary because it appears to be based on the "now rescinded blanket policy rather than individualized assessment as required by statute." *Id*. at 4. Further, he contends that the RRM provided no explanation for the override of the facility-level recommendation, and that the BOP has failed to consider home confinement as an alternative to RRC placement as required by 18 U.S.C. § 3624(c)(2) and BOP program statement 7310.0412.d. *Id*. at 4-5.

In apparent anticipation that Respondent would raise exhaustion as a basis for moving to dismiss his petition, Davis argues that requiring him to exhaust administrative remedies would cause him irreparable harm because it would take up to 120 days to complete and, by that time, he will have lost the opportunity for appropriate pre-release placement. ECF No. 1 at 6. Davis adds that the matters raised in his petition concern issues of statutory interpretation, and exhaustion may be waived in cases involving statutory interpretation and imminent irreparable harm. *Id*., citing *Garza v. Davis*, 596 F.3d 1198, 1204 (10th Cir. 2010) (recognizing narrow futility exception but

holding that categorical denial of prisoner transfer request at prison camp level does not render administrative remedy procedure futile) and *Levine v. Apker*, 455 F.3d 71 (2nd Cir. 2006).

Davis maintains that this Court should review the BOP's discretionary decision-making in pre-release placement determinations; he relies on the Supreme Court's decision in *Loper Bright Enterprises v. Raimondo*, 693 U.S. 369 (2024), to support his contention.  ECF No. 1 at 4.  He seeks as relief an Order from this Court requiring the BOP to provide him with the full 365 days of SCA placement as recommended by the Unit Team at FCI Cumberland or, in the alternative, to order the BOP to conduct a proper individualized assessment of his pre-release placement needs without any blanket limitations.  *Id*. at 7.  He also asks that the BOP be ordered to consider him for home confinement as an alternative if RRC bed space is limited.  *Id*.

Respondent asserts that the petition must be denied and dismissed because this Court does not have jurisdiction to consider the petition; because Davis failed to exhaust administrative remedies; and because Davis is not entitled to any particular amount of community confinement under the SCA.  ECF No. 7 at 8-9.

## II.    STANDARD OF REVIEW

"The Federal Rules of Civil Procedure . . . to the extent that they are not inconsistent with statutory provisions or [the Rules Governing Section 2254 Cases], may be applied" to habeas corpus proceedings.  Rule 12, *Rules Governing § 2254 Cases in the U.S. Dist. Cts*.; *see also* Rule 1(b), *Rules Governing § 2254 Cases in the U.S. Dist. Cts.*  Under Federal Rule of Civil Procedure 12(b)(6), dismissal is appropriate where the complaint "fail[s] to state a claim upon which relief can be granted."  In deciding a motion to dismiss, the Court "accept[s] all factual allegations as true and draw[s] all reasonable inferences in favor of the plaintiff [or petitioner]."  *Washington v.*

*Hous. Auth. of the City of Columbia*, 58 F.4th 170, 177 (4th Cir. 2023) (citing *Singer v. Reali*, 883 F.3d 425, 437 (4th Cir. 2018)).

"To survive a motion to dismiss, a complaint [or petition] must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also* Fed. R. Civ. P. 8(a)(2) (noting that a complaint must contain "a short and plain statement of the claim showing that the [plaintiff] is entitled to relief"). "The complaint [or petition] must offer 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action[.]'" *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 747 (4th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555). At the same time, a "complaint [or petition] will not be dismissed as long as [it] provides sufficient detail about [the plaintiff's] claim to show that [the plaintiff] has a more-than-conceivable chance of success on the merits." *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 396 (4th Cir. 2014).

## III.    DISCUSSION

Although this Court's power to entertain a petition for writ of habeas corpus under 28 U.S.C. § 2241 is broad, it "has long been established that the district court's discretion to entertain habeas petitions and exercise the power of the writ is not boundless." *Timms v. Johns*, 627 F.3d 525, 530 (4th Cir. 2010). "[P]rudential concerns, such as comity and the orderly administration of criminal justice, may require a federal court to forgo the exercise of its habeas corpus power." *Munaf v. Geren*, 553 U.S. 674, 693 (2008). Such is the case where there has been a failure to exhaust administrative remedies.

Although 28 U.S.C. § 2241 does not contain a statutory exhaustion requirement, courts consistently require prisoners to exhaust their administrative remedies before seeking habeas

review under § 2241, unless an exception to the exhaustion requirement applies. *See, e.g., Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 489–91 (1973) (requiring exhaustion in a § 2241 matter); *Timms v. Johns*, 627 F.3d 525, 530–33 (4th Cir. 2010) (same); *McClung v. Shearin*, 90 F. App'x 444, 445 (4th Cir. 2004) ("Federal prisoners must exhaust their administrative remedies prior to filing § 2241 petitions."); *Miller v. Clark*, 958 F.2d 368, 1992 WL 48031, at *1 (4th Cir. 1992) (unpublished table opinion) ("Federal prisoners who wish to challenge the length of their confinement must first exhaust administrative remedies."); *Henderson v. Warden, Edgefield Satellite Prison Camp*, No. 2:09-cv-01599-RBH, 2009 WL 3317149, at *2 (D.S.C. Oct. 14, 2009) ("It is well settled that a federal prisoner is required to exhaust his administrative remedies within the Bureau of Prisons before filing an action pursuant to § 2241.").

The Bureau of Prisons' Administrative Remedy Procedure provides that if an inmate is unable to resolve his complaint informally, he may file a formal written complaint on the proper form within 20 calendar days of the date of the occurrence on which the complaint is based. *See* 28 C.F.R. § 542.14(a). If an inmate is not satisfied with the Warden's response to his formal written complaint, he may appeal to the Regional Director within 20 calendar days of the Warden's response. *See* 28 C.F.R. § 542.15(a). If the inmate still is not satisfied, he may appeal the Regional Director's response to the Office of General Counsel in Washington, D.C., using the appropriate forms. The inmate must file this final appeal within 30 calendar days of the date the Regional Director signed the response. *See id.* An inmate is not deemed to have exhausted his administrative remedies until he has filed his complaint at all levels. *See* 28 C.F.R. § 542.15(a).

Exhaustion "serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency." *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992). Exhaustion is "normally desirable" in order to allow for the development of a factual record and to permit the

6

agency an opportunity to exercise its discretion or apply its expertise, *McKart v. United States*, 395 U.S. 185, 193–94 (1969), as well as to allow the agency to correct its mistakes, and to conserve judicial resources, *McCarthy*, 503 U.S. at 145–46.

Here, Davis filed an initial complaint at the institutional level, but did not appeal the Warden's response. ECF No. 7-8 at 3 (Decl. of Misty Shaw). Davis does not dispute that he did not exhaust administrative remedies. ECF No. 12 at 2-3. Rather, he asserts that administrative exhaustion would be futile and therefore should not be required by this Court. *Id.* Davis cites *Fraley v. U.S. Bureau of Prisons*, 1 F.3d 924, 925 (9th Cir. 1993), in support of his assertion that exhaustion here would be futile. Futility in the *Fraley* case, however, was demonstrated because the first grievance filed by the petitioner was denied based on an official BOP policy. *Id.* Davis does not contend that any appeal of his grievance would have been denied without substantive consideration due to the existence of a policy. Rather, he claims that if his allegation is correct, the relief he seeks could not be awarded as completion of the process would take too long. This is not the sort of futility contemplated by the courts when excusing failures to exhaust administrative remedies. *See e.g. Ross v. Blake*, 578 U.S. 632, 643-44 (2016) (recognizing exceptions to PLRA exhaustion requirement). Absent a valid excuse, Davis's failure to exhaust administrative remedies divests this Court of jurisdiction and the merits of his claim may not be considered until and unless he exhausts administrative remedies.

But even if Davis had exhausted his administrative remedies, his challenge to the BOP determination still fails. This Court's role is not to second-guess the BOP's computation of his earned time credits or the time he is entitled to serve in an RRC. "[T]he Attorney General and the Bureau of Prisons are entrusted with sole authority to compute federal sentences." *Clinkenbeard v. King,* No. CV 23-3151 (JRT/LIB), 2024 WL 4355063, at *4 (D. Minn. Sept. 30, 2024) citing 28

C.F.R. § 0.96; *United States v. Moore*, 978 F.2d 1029, 1031 (8th Cir. 1992), *see also* 18 U.S.C. § 3632(d)(4)(A)(ii) (giving further discretion to the Bureau of Prisons to grant additional time credits to prisoners it deems are at lower risks of recidivating); *Mero v. Yates*, No. 2:22-72, 2022 WL 17653228, at *5 (E.D. Ark. Sept. 27, 2022) ("The earned time credit program is new and multifaceted, and the authority to implement the program and calculate an inmate's time credits is delegated to the BOP, not the federal courts.").

Further, under 18 U.S.C. § 3235 Congress specified that the provisions of the APA governing judicial review, §§ 701–06, are inapplicable to "the making of any determination, decision, or order under" any provision of 18 U.S.C. §§ 3621 to 3626, comprising subchapter C (entitled "Imprisonment"). Because § 3625 expressly precludes judicial review of agency adjudicative decisions under those statutory provisions, courts lack jurisdiction in § 2241 proceedings challenging such decisions. *See Minotti v. Whitehead*, 54 F. Supp. 2d 750, 761 (D. Md. 2008) (judicial review unavailable for any adjudication by the BOP); *Belcher v. Stewart*, Civ. No. CCB-18-3471, 2020 WL 512731, at *3 (D. Md. Jan. 30, 2020) (holding that BOP adjudication consists of "retrospective particularized fact-finding for each prisoner."); *Hubbard v. Carter*, Civ. No. BAH-24-729, 2025 WL 524117, at *4 (D. Md. Feb. 18, 2025) (holding the court had no jurisdiction to overturn BOP decision regarding recidivism risk level score). Here, Davis is challenging the placement decision itself, which constitutes a challenge to an agency adjudicative decision that is not subject to judicial review. *See Richmond v. Scibana*, 387 F.3d 602, 605 (7th Cir. 2004) ("A placement decision itself is not open to challenge under the APA, *see* 18 U.S.C. § 3625, but [the plaintiff] does not contest his current placement; he contests only the rules that will be used to decide where he should serve the last few months of his time."); *Martin v. Gerlinski*, 133 F.3d 1076, 1079 (8th Cir. 1998) (stating that "§ 3625 precludes judicial review of agency

adjudicative decisions but not of rulemaking decisions"); *Jasperson v. Fed. Bureau of Prisons*, 460 F. Supp. 2d 76, 84 (D.D.C. 2006).

Davis's reliance on *Loper-Bright Enterprises v. Raimondo*, 693 U.S. 369 (2024), does not change the analysis. There, the Supreme Court held that it is the courts' role to interpret statutes, and courts need not defer to an agency's interpretation of the law simply because a statute is ambiguous. 603 U.S. at 391–94. Here, the applicable statute provides that:

> The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

18 U.S.C. § 3624(c)(1). The statute grants the BOP Director discretion to determine how best to provide BOP prisoners with a reasonable opportunity to adjust to and prepare for reentry into the community; it does not guarantee BOP prisoners any pre-determined length of stay in community placement or an RRC.

The Writ of Habeas Corpus must therefore be denied by separate Order which follows.


_February 11, 2026____                              _____/s/_____
Date                                                 Adam B. Abelson
                                                     United States District Judge